IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VANESSA LASH<br>2022 Amherst Road, NE<br>Massillon, Ohio 44646<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART ASSOCIATES, INC.<br>1 Massillon Marketplace Drive, SW<br>Massillon, Ohio 44646<br><br>**Serve also:**<br>Wal-Mart Associates, Inc.<br>c/o CT CORPORATION SYSTEM<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Vanessa Lash, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Lash is a resident of the city of Massillon, county of Stark, state of Ohio.

2. Wal-Mart Associates, Inc. (hereinafter, "Walmart") is a foreign corporation which operates a business located at 1 Massillon Marketplace Drive, SW, Massillon, Ohio 44646.

3. Upon information and belief, Korns is a resident of the state of Ohio.

## JURISDICTION & VENUE

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Lash is alleging a Federal Law Claim under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq*.



5. All material events alleged in this Complaint occurred in county of Lash.

6. This Court has supplemental jurisdiction over Lash's state law claims pursuant to 28 U.S.C. § 1367 as Lash's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Within 300 days of the conduct alleged below, Lash filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2018-00331.

9. On or about October 27, 2018, the EEOC issued and mailed a Notice of Right to Sue letter, upon request, to Lash regarding the Charges of Discrimination brought by Lash.

10. Lash received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

11. Lash has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

12. Lash has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

13. Lash is a former employee of Walmart.

14. Walmart hired Lash on or about November 5, 2014.

15. Walmart initially hired Lash as a cashier.

16. Lash was a strong performer during her three years of employment with Walmart.

17. Lash received positive performance evaluations during her three years of employment with Walmart.



18. Lash received no meaningful history of discipline during her three years of employment with Walmart.

19. Lash received a positive performance review five months prior to her termination.

20. Walmart promoted Lash to Asset Protection during her employment.

21. Walmart promoted Lash to Asset Protection because she was a strong employee.

22. Prior to being promoted to Asset Protection, Lash had previous work experience in asset protection and/or security.

23. The individual who promoted Lash was not involved in the determination to terminate her employment.

24. At the time of Lash's termination, she was 58 years old.

25. During the beginning of Lash's employment, she worked at a Walmart store in Canton, Ohio.

26. Lash later transferred to a store in Massillon, Ohio.

27. During Lash's employment, Karen Korns was the Asset Protection Manager.

28. Korns supervised Lash's employment.

29. Korns had authority to hire, fire, and discipline employees.

30. Korns is substantially younger than Lash.

31. In asset protection, it was Lash's job to monitor the store, and to perform security and safety inspections.

32. In asset protection, it was Lash's job to find and stop shop lifters.

33. In asset protection, it was Lash's job to determine whether an individual was attempting to leave the store without paying for merchandise.

34. The Massillon store only had one other employee in asset protection.

35. The other employee in asset protection during Lash's employment was Mike Kauffmann.



36. During Lash's employment, Kauffmann was in his early 30's.

37. Kauffmann is substantially younger than Lash.

38. During Lash's employment, Korns provided preferential treatment to Kauffmann.

39. Korns provided preferential treatment to Kauffman in the form of allowing Kauffmann to work the day shifts and instructing Lash to work the night shifts.

40. Day shifts are more preferential than nights shifts due to the timing of the shifts.

41. Day shifts are also more preferential than night shifts because Walmart offers trainings and seminars during the day shifts to employees.

42. Walmart does not offer the same trainings and seminars during the night shifts.

43. Upon information and belief, Lash has or had as much, or more experience than Kauffmann in asset protection.

44. As Lash had as much or more experience in asset protection as Kauffmann, Lash should have been, in the very least, offered to work equal amounts of day and night shifts.

45. Korns provided this preferential treatment to Kauffmann due to Lash's age.

46. Defendants allegedly terminated Lash for a "bad stop."

47. Due to Lash's position, she became familiar with some customers who would cause problems at the store.

48. One of the problem customers who would continually cause problems at the store was a known "huffer" (hereinafter referred to as, "the Huffer").

49. A huffer is an individual who inhales aerosol cans or paint to become impaired.

50. The Huffer was known to come into the store to purchase only aerosol cans.

51. The Huffer would come into that location on many occasions and would appear intoxicated.

52. The Huffer would purchase the aerosol cans with the intent to use them to become intoxicated.



53. The alleged reason for terminating Lash's employment centered on her stopping the Huffer, believing that he was shoplifting.

54. The alleged reason for terminating Lash's employment centered on notifying law enforcement because she believed that the Huffer posed a threat to the public at the store.

55. The alleged reason for terminating Lash's employment centered on notifying law enforcement because Lash believed that the Huffer created an unsafe workplace.

56. When the Huffer entered the store, he was causing a disturbance with customers and with employees.

57. When the Huffer was leaving the store, Lash witnessed him leaving with aerosol cans, but did not see a receipt.

58. When the Huffer entered the store, Lash believed that he was intoxicated.

59. Pursuant to Walmart's own policies and procedures, if a Walmart customer "appears to be under the influence of drugs or alcohol," the employee must "disengage from the situation, and contact law enforcement."

60. As Lash believed that the Huffer was under the influence of drugs, and because he was causing a disturbance, Lash instructed a co-worker to contact law enforcement.

61. Lash's belief that the Huffer was intoxicated was a reasonable belief.

62. Lash's belief that the Huffer was stealing merchandise was a reasonable belief.

63. Lash's belief that the Huffer was posing a threat to the workplace was a threat.

64. Upon information and belief, law enforcement was contacted with respect to the Huffer.

65. Upon information and belief, as law enforcement was contacted, a writing was created memorializing Lash's complaint that she was being subjected to an unsafe workplace.

66. Defendant terminated Lash's employment a week after the incident with the Huffer.

The Employee's Attorney.™

67. Defendant terminated Lash due to her age.

68. Defendant terminated Lash because she made a complaint about being subjected to an unsafe workplace.

69. Upon information and belief, Defendant has a progressive disciplinary policy.

70. Upon information and belief, Defendant employs a three strike/write up policy prior to termination.

71. The incident with the Huffer would have been Lash's first write up.

72. Defendant violated its own progressive disciplinary policy due to Lash's age.

73. Defendant violated its own progressive disciplinary policy because Lash made a complaint that she was being subjected to an unsafe working environment.

74. Upon information and belief, Walmart has chosen to discipline, rather than terminate substantially-younger employees in asset protection for similar alleged conduct.

75. Defendant treated substantially-similar, significantly-younger employees more favorably than it treated Lash.

76. Defendant treated substantially-similar employees who have not made complaints about an unsafe work environment more favorably than Lash.



**COUNT I: AGE DISCRIMINATION IN VIOLATION OF 29 U.S.C. § 621 *et seq.***

77. Lash restates each and every prior paragraph of this complaint, as if it were fully restated herein.

78. Lash was 58 years old at the time of her termination from Walmart.

79. At all times relevant, Lash was a member of a statutorily-protected class under 29 U.S.C. § 621 *et seq*.

80. Defendant treated Lash differently from other similarly situated employees based on her age.

81. Lash was fully qualified for her position and employment with the Defendant.

82. Lash, at age 58, was a member of a statutorily-protected class under 29 U.S.C. § 621 *et seq*. at the time she was terminated from her employment with the Defendant.

83. After terminating Lash, Defendant replaced Lash with a person who was significantly younger and/or not belonging to the protected class under 29 U.S.C. § 621 *et seq*.

84. Defendant violated 29 U.S.C. § 621 *et seq*. by discriminating against Lash based on her age.

85. Lash suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

86. As a direct and proximate result of the Defendant's conduct, Lash suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

87. Lash restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

88. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

The Employee's Attorney.™



89. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

90. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

91. Defendant's termination of Lash jeopardizes these public policies.

92. Defendant's termination of Lash was motivated by conduct related to these public policies.

93. Defendant's had no overriding business justification for terminating Lash.

94. As a direct and proximate result of Defendants' conduct, Lash has suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Lash demands from Defendants the following:

(a) Issue an order requiring Defendant to restore Lash to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Lash for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

The Employee's Attorney.™ 

(d) An award of reasonable attorneys' fees and non-taxable costs for Lash's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Daniel S. Dubow*
Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
daniel.dubow@spitzlawfirm.com

*Attorneys for Plaintiff Vanessa Lash*



## JURY DEMAND

Plaintiff Vanessa Lash demands a trial by jury by the maximum number of jurors permitted.

/s/ *Daniel S. Dubow*
Daniel S. Dubow (0095530)

